**JUDWIN PROPERTIES, INC.,**
**et al., Appellants,**

**v.**

**VELSICOL CHEMICAL**
**CORPORATION, et**
**al., Appellees.**

No. 04–95–00183–CV.

Court of Appeals of Texas,
San Antonio.

June 19, 1996.

Charles W. Kelly, J. Douglas Sutter, Kelly, Sutter, Mount & Kendrick, P.C., Houston, for Appellants.

Elizabeth Wiley Johnston, Earl B. Austin, Baker & Botts, L.L.P., Dallas, James L. Ray, Willie Ben Daw, III & Associates, P.C., Houston, for Appellees.

Before RICKHOFF and HARDBERGER, JJ., and PRESTON H. DIAL, J. (Assigned).[1]

RICKHOFF, Justice.

This is an appeal from a summary judgment rendered in favor of Velsicol Chemical Corporation, a pesticide manufacturer ("Velsicol"), and Columbia Management Services, Inc. d/b/a CMS Pest Control, Inc., an exterminating company ("CMS"). In four points of error, appellants challenge both grounds asserted in the summary judgment motion contending: (1) the discovery rule precludes their claims from being barred by limitations; and (2) neither res judicata nor collateral estoppel bars their claims. We reverse the trial court's judgment.

## FACTS

Appellant Judwin Properties, Inc. ("Judwin") manages and maintains commercial real estate in the Greater Houston area, including Kings Park Apartments, Edgebrook Apartments, Camino South Apartments, and Fondren Glen Apartments (the "Apartments"). The remaining appellants are entities and individuals which own the Apartments.

From April 13, 1987 through April 16, 1987, maintenance men employed by Judwin sprayed the exterior of the Apartments with chlordane. After much media attention, the Texas Department of Agriculture ("TDA") began investigating the incident on April 23, 1987, and ordered the remediation of the exterior of the Apartments.

On June 20, 1987, the first in a series of cases was filed against Judwin and others by tenants seeking to recover damages as a result of the spraying.[2] Appellants filed cross-claims or third-party petitions in the *Hagan, Charles* and *Galvan* cases against appellees seeking contribution and indemnity.[3] On December 20, 1991, appellants filed an amended third-party petition in the *Hagan* case to assert independent causes of action against appellees, and in January of 1992, appellants amended their cross-claims in the *Charles* and *Galvan* cases to assert similar claims. These independent causes of action were severed from the *Hagan, Charles* and *Galvan* cases and consolidated in the case before us on appeal.

Appellees filed a motion for summary judgment asserting that appellants' claims were barred by the statute of limitations and collateral estoppel.[4] The trial court originally denied the motion but ordered a separate trial on the limitations issue and limited discovery to that issue until the separate trial was concluded. On motion for reconsideration, the trial court granted appellees' motion

1. Assigned to this case by the Chief Justice of the Supreme Court of Texas pursuant to Tex.Gov't Code Ann. § 74.003 (Vernon 1988).

2. *Alfonso Perez Cordova, et al. v. Kings Park Apartments, et al.*, No. 87–28345 (157th Dist. Ct., Harris County, Tex., June 20, 1987); *Brenda Steele, et al. v. The Judwin Companies, et al.*, No. 87–46580 (125th Dist. Ct., Harris County, Tex., October 14, 1987); *Paul and Sara Hagan, et al. v. Judwin Properties, Inc. et al.*, No. 89–13529 (270th Dist.Ct., Harris County, Tex., March 31, 1989); *Eura D. Charles, et al. v. Kings Park Apartments, et al.*, No. 90–063442 (80th Dist.Ct.,

Harris County, Tex., December 3, 1990); *Angela D. Galvan, et al. v. Judwin Properties, Inc. et al.*, No. 91–25083 (157th Dist.Ct., Harris County, Tex., June 11, 1991).

3. The third party petition was filed in the *Hagan* case on October 9, 1990. The cross-claims were filed in the *Charles* and *Galvan* cases on September 10, 1991 and October 15, 1991, respectively.

4. The motion and exhibits comprise 419 pages. The response and exhibits comprise 314 pages.

for summary judgment, and appellants appeal that decision.[5]

## DISCUSSION

The general standard for reviewing a motion for summary judgment has been clearly established. The movant for summary judgment is first required to disprove at least one of the essential elements of each of the plaintiff's causes of action in order to prevail on summary judgment. *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991). This initial burden requires the movant to show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). In determining whether a material fact issue exists to preclude summary judgment, evidence favoring the non-movant is taken as true, and all reasonable inferences are indulged in favor of the non-movant. *Id.* Any doubt is resolved in favor of the non-movant. *Id.*

Texas law recognizes summary judgment to be a harsh remedy requiring strict construction. *Garcia v. John Hancock Variable Life Ins. Co.,* 859 S.W.2d 427, 435 (Tex.App.—San Antonio 1993, writ denied). The reason for applying such a strict standard is because a summary proceeding is "not a conventional trial, but an exception to the usual and traditional formal procedure whereby witnesses are heard in open court and documentary proof is offered and received into evidence." *Id.* A summary judgment is not intended to permit a trial by deposition or affidavit and should not be resolved by weighing the relative strength of the conflicting facts and inferences. *Id.*

In the instant case, the trial court granted a general summary judgment. Therefore, we must consider whether any theory asserted in appellees' motion supports the summary judgment. *State Farm Fire & Cas. Co. v. S.S.,* 858 S.W.2d 374, 380 (Tex.

1993). We will affirm the summary judgment if any theory is meritorious. *Id.*

### 1. Statute of Limitations

A defendant moving for summary judgment based on the affirmative defense of limitations has the burden to plead and prove not only the limitations defense but, in cases in which the plaintiff pleads the discovery rule exception, the defendant also bears the burden of negating the discovery rule. *Woods v. William M. Mercer, Inc.,* 769 S.W.2d 515, 517–18 & n. 2 (Tex.1988). In order to negate the discovery rule, the movant is required to show that there is no genuine issue of material fact with respect to when the plaintiff discovered or should have discovered the nature of the injury. *Burns v. Thomas,* 786 S.W.2d 266, 267 (Tex.1990).

Appellants contend the discovery rule exception precluded the limitations bar in the instant case. The Texas Supreme Court has adopted a two-part test for determining when the discovery rule applies. *See Computer Associates International, Inc. v. Altai, Inc.,* 918 S.W.2d 453, 456 (Tex.1996); *see also S.V. v. R.V.,* 39 Tex.Sup.Ct.J. 386, 389, —— S.W.2d —— [1996 WL 112206] (March 14, 1996). First, the nature of the injury must be inherently undiscoverable. *Altai, Inc.,* 918 S.W.2d at 456. Second, the evidence of the injury must be objectively verifiable. *Id.*

Appellees assert that the injury was not inherently undiscoverable because appellants knew of the injury immediately after the spraying in April of 1987. Appellants assert that the injury was not discoverable for the following reasons:

(1) Prior to 1991, appellants were only aware of contamination to the exterior walls, since the TDA never required Judwin to sample the interiors.

(2) The contamination was only discovered after sampling was undertaken by Judwin at the behest of the City of Houston in 1991, and Eric LeBrocq, appellants' expert, concludes in his affidavit:

---

**5.** After the trial court granted appellees' motion for summary judgment, appellants and Green Light Company, Green Light Sales Company, Handy Hardware Wholesale, Inc., Southwest True Value Hardware and Redwood Chemical Company entered into a joint motion to dismiss whereunder all claims asserted between and against these parties were dismissed with prejudice. This made the summary judgment final for purposes of appeal.

(a) there is a direct relationship between the age of the complex and the frequency of chlordane residues in the interiors of the apartments;  (b) the chlordane residues were not, in reasonable engineering probability, deposited by the April, 1987 sprayings by Judwin personnel;  and (c) the chlordane residues were, in reasonable engineering probability, deposited by a series of deliberate, interior applications by persons other than Judwin, in all likelihood tenants and/or commercial pest control operators.[6]

(3) The injury was not discoverable in 1987 because it was caused by sprayings by CMS subsequent to the April 1987 spraying or by the use of equipment which had not been cleaned of chlordane residue prior to its use in treating the Apartments after April 1987.[7]

Appellants' second and third contentions relate more to the cause of the interior contamination discovered in 1991 than to the issue of whether appellants should have or did discover the interior contamination at an earlier date, which was the issue before the trial court in the motion for summary judgment.  Appellants' contention that they did not know, nor did they have reason to know, of the interior residues before 1991 is in direct contradiction to the deposition testimony of former Judwin vice-president Marvin Isgur, Judwin's property manager John Bolling and Judwin's president Jerold Winograd.[8]  Furthermore, appellants' statements support appellees' argument.  In determining whether a material fact issue exists to preclude summary judgment, all reasonable inferences are indulged in favor of the non-movant and any doubt is resolved in the non-movants's favor.  *Nixon v. Mr. Property Management Co.*, 690 S.W.2d at 548–49.  In the absence of controverting proof, it could reasonably be inferred that some amount of chlordane residue could result from using equipment to treat the Apartments that had contained chlordane and was not cleaned in the interim.

6. Although appellees did not move for summary judgment on causation grounds, we note that the conclusion of appellants' expert that the contamination was attributable to applications of chlordane by tenants before 1987 brings the justification for imposing limitations into focus because locating all former tenants to ascertain the extent of their applications of chemicals would be difficult if not impossible. *See S.V. v. R.V.*, 39 Tex. Sup.Ct.J. at 386, —— S.W.2d at —— (limitations protects defendants from having to deal with cases in which the search for truth is impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents or otherwise).  Furthermore, these tenants would have a vested interest in not remembering any personal applications of the pesticide since some of these same tenants are suing Judwin to recover personal damages relating to the 1987 spraying.

7. Appellants third contention is presumably an alternative plea to their second contention since claiming contamination resulted from actions taken after 1987 would appear to be inconsistent with the contention of appellants' expert that the contamination was correlated to the age of the various complexes.  In addition, appellants' reliance on the deposition of Gene Goss to support the proposition that CMS applied chlordane at one of the Apartments in 1988 is misplaced given that Goss rescinded his initial testimony and stated that chlordane was not used on that date.  With respect to the unclean equipment, appellees assert that there is no evidence that equipment was used to treat the Apartments after chlordane was applied elsewhere or that the failure to have a dedicated system for chlordane products resulted in interior contamination.  Appellees' assertion ignores, however, that they moved for summary judgment and, therefore, they bear the burden of proof.  No affidavit was presented to

8. At his deposition, Marvin Isgur testified as follows:

Q.  You knew that the TDA was testing the interiors of the apartments, correct?
A.  I knew that they were doing some air sampling in the interiors.
Q.  And you know that they were finding levels in some of the apartments in 1987, correct?
A.  On the air monitoring?
Q.  Yes.
A.  I knew that some of the air monitors showed some chlordane and some showed no chlordane, yes.
Q.  And you know that they were also testing air-conditioning filters.
A.  I knew they tested some air-conditioning filters.
Q.  And these are filters inside the apartments, correct?
A.  Yes.
Q.  Each apartment has its own filter.
A.  Yes.
Q.  You knew that the TDA was finding chlordane on some of these air-conditioning filters inside the apartments.
A.  Just to clarify, I said they tested some filters.  Of the some that were tested, some I

that "TDA never required Judwin to sample the interiors" and that the City of Houston's request in 1991 was the "first time any government agency had expressed a need to sample the interiors" are at best misleading since the summary judgment evidence disclosed that the TDA did undertake interior air sampling in 1987 and discovered detectable levels of chlordane. Nevertheless, the question that arises is whether the discovery of detectable levels of chlordane in 1987 was sufficient to put appellants on notice as to their "injury" in light of the fact that detectable levels were only identified in 24 of the 294 apartments tested and the levels detected in those units did not exceed the guideline of 0.5 micrograms per cubic meter set by the Agency for Toxic Substance and Disease Registry.

■ In order for an injury to be "inherently undiscoverable," its existence must not ordinarily be discoverable even with the exercise of due diligence. *Altai, Inc.*, 918 S.W.2d at 456. From the evidence presented in this case, interior chlordane levels are obviously detected through the use of sampling techniques, both air monitoring and surface swabbing. Appellees presented no summary judgment evidence that indicated appellants were required to routinely test interior chlordane levels after the 1987 results detected levels which did not exceed the safety guidelines in effect at that time. Appellants presented evidence that one of Velsicol's representatives assured Judwin that such action would not be necessary. We

conclude that since the chlordane levels detected in 1987 did not exceed the safety guidelines, a genuine issue of material fact was raised as to whether appellants discovered their injury or whether appellants would have discovered their injury sooner if they had continued to routinely test interior chlordane levels between 1987 and 1991. Therefore, appellees failed to negate the discovery rule as an exception to their limitations defense, and summary judgment was improper as to limitations.[9]

## 2. Res Judicata and Collateral Estoppel

Appellees rely upon the dismissal of the cross-claims in the *Steele* case to support their res judicata and collateral estoppel arguments.[10] The *Steele* case was an action by tenants seeking damages as a result of the April 1987 spraying, which included factual assertions that the April 1987 spraying contaminated the interior of the units.

■ Res judicata generically encompasses both claims preclusion (generally known as res judicata) and issue preclusion (generally known as collateral estoppel). *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex.1992); *Morris v. Landoll Corp.*, 856 S.W.2d 265, 267 (Tex.App.—Fort Worth 1993, writ denied). Summary judgment may be granted based on a plea of res judicata. *Jones v. Nightingale*, 900 S.W.2d 87, 88 (Tex. App.—San Antonio 1995, writ ref'd).

■ Res judicata, or claims preclusion, prevents not only the relitigation of

knew they had found chlordane; and some they did not.
Q. And you knew that in 1987.
A. Yes.
John Bolling testified as follows:
Q. Have you ever heard anything that leads you to believe that chlordane was found in some of the apartments?
A. Yes.
Q. On various of the properties?
A. I'm not sure if it was one or two.
Q. When did you hear that?
A. I don't remember.
Q. Was it back probably during this period of time during the Spring and Summer of '87?
A. Correct.
Q. And do you know from whom you heard it?
A. The TDA guys.
Jerold Winograd testified as follows:
Q. When is the soonest they could have known that there was chlordane in the apartments?
A. From the TDA result in 1987.

**9.** We also note that the interior sampling test results obviously verify the damage to the Apartments themselves, thereby making the injury objectively verifiable. *See Hays v. Hall*, 488 S.W.2d 412, 414 (Tex.1972) (test results and pregnancy confirm negligence in vasectomy). Although appellants are also claiming damages for loss of income and damage to the Apartments' reputation, this "injury" to the reputation of the Apartments is a direct result of the injury to the Apartments themselves, i.e., the presence of the chlordane. Therefore, it would appear that the issue regarding proof of the damage to the Apartments' reputation would more properly be presented on appeal as an issue relating to whether appellants were able to prove the damage with reasonable certainty.

**10.** *Brenda Steele, et al. v. The Judwin Companies, et al.*, No. 87–46580 (125th Dist.Ct., Harris County, Tex., October 14, 1987).

claims actually and finally adjudicated in a prior suit but also the litigation of related matter that, with the use of diligence, should have been litigated in the prior suit. *Barr*, 837 S.W.2d at 628. Issue preclusion, or collateral estoppel, prevents relitigation of particular issues resolved in a prior suit. *Id.* at 628–29.

Where a defendant asserts a cross-claim or third-party claim against another party, the cross-claimant or third-party plaintiff is required to assert all claims arising against the cross-defendant or third-party defendant that arise from the subject matter of the claim. *Morris*, 856 S.W.2d at 268–69. Therefore, if a defendant files a cross-action or third-party action against a co-defendant for contribution and indemnity, the defendant must assert all causes of action he has against the co-defendant arising from the subject matter of the suit or such claims will be barred by res judicata. *Id.*

Determining what constitutes the subject matter of a suit requires an examination of the factual background of the claim or claims in the prior litigation. *Barr*, 837 S.W.2d at 630. Texas has adopted the "transactional" approach to res judicata. *Getty Oil Co. v. Insurance Co. of North America*, 845 S.W.2d 794, 798 (Tex.1992). In determining whether claims arise out of the same subject matter and thereby constitute a single "transaction," the court considers: (1) their relatedness in time, space, origin or motivation; (2) whether the claims form a convenient trial unit; and (3) whether their treatment as a trial unit conforms to the parties' expectations or business understanding or usage. *See id.* at 799; *see also Morris*, 856 S.W.2d at 268.

The voluntary withdrawal or dismissal of claims from an earlier suit will not preclude the operation of res judicata to bar their assertion in a subsequent suit, even where such claims are dismissed without prejudice. *Jones*, 900 S.W.2d at 90.

Appellees assert that the dismissal of appellants' third-party petition in the *Steele* case prevents the litigation of the claims asserted by appellants in the case at bar based on principles of res judicata and collateral estoppel. At the time of the dismissal, the issue in the *Steele* case related solely to the injury and contamination resulting from the April 1987 spraying. Appellants' claims relating to the historical applications of the pesticide by CMS or the continued applications after April of 1987 were not raised. Although all of the claims involved allegations of pesticide contamination, the claims in the instant case were unrelated in time to the claims arising from the April 1987 spraying, and their actual severance from the *Hagan, Charles* and *Galvan* cases demonstrates that the claims do not form a convenient trial unit. For these reasons, we do not find that appellants' claims were barred by res judicata or collateral estoppel, and summary judgment on this ground was not proper.

## CONCLUSION

The summary judgment was not properly granted because appellees failed to negate the discovery rule exception to the statute of limitations bar and appellants' claims were not barred by res judicata or collateral estoppel. The judgment of the trial court is reversed, and this cause is remanded to the trial court for further proceedings consistent with this opinion.