VELSICOL CHEMICAL CORPORATION and Columbia Management Services, Inc. d/b/a CMS Exterminating Service, Petitioners,

v.

Judith WINOGRAD, et al., Respondents.

No. 96–0861.

Supreme Court of Texas.

Dec. 11, 1997.

Rehearing Overruled Dec. 12, 1997.

James L. Ray, Houston, Earl B. Austin, Margaret Niver McGann, Dallas, for Petitioners.

Charles W. Kelly, J. Douglas Sutter, Megan Gabel, Houston, for Respondents.

**OPINION**

PER CURIAM.

This is an action for damages arising from the spraying of a pesticide, chlordane, at

several Houston area apartment complexes. Petitioners are Velsicol Chemical Corporation, a pesticide manufacturer, and Columbia Management Services, Inc., d/b/a CMS Exterminating Service (collectively, Velsicol). Respondent Judwin Properties, Inc. (Judwin) manages apartments in the Houston area. Both Judwin and Velsicol were sued by tenants when the toxic chemical chlordane was used at some of the apartments managed by Judwin to treat for termites and other pests. This suit involves independent claims brought by Judwin against Velsicol for injury to Judwin's property and business.

The issue in this appeal is whether the discovery rule tolled the statute of limitations when Judwin knew that chlordane residues were present inside individual apartments in 1987, but did not discover residue concentrations in excess of regulatory guidelines until 1991. The trial court rendered summary judgment for Velsicol holding that either limitations or collateral estoppel barred the suit. The court of appeals reversed and remanded the suit. 928 S.W.2d 127. We reverse the judgment of the court of appeals and render judgment for Velsicol.

Judwin manages Kings Park Apartments, Edgebrook Apartments, Camino South Apartments, and Fondren Glen Apartments ("the Apartments"). In April 1987, maintenance men employed by Judwin sprayed the exterior of the Apartments with chlordane. After much media attention about the spraying and tenants' concerns over the use of chlordane, the Texas Department of Agriculture ("TDA") began investigating the incident on April 23, 1987. TDA found chlordane present on the exterior of the Apartments and ordered its remediation. However, because the chlordane levels discovered inside individual apartments did not amount to contamination,[1] TDA did not order remediation of the interior.

On June 20, 1987, several tenants filed the first in a series of lawsuits against Judwin, seeking to recover damages as a result of the exterior spraying. The tenants thereafter added Velsicol as a co-defendant in all the cases. Judwin cross-claimed against Velsicol for contribution and indemnity.

Early in May of 1991, the City of Houston Health Department, prompted by renewed media attention, requested that Judwin sample the interiors of the Apartments for chlordane contamination. Samples collected and analyzed by an environmental consulting firm revealed for the first time that the interior level of chlordane exceeded the "contamination" guidelines. Consequently, the City of Houston required Judwin to remediate some of the apartments' interiors.

Judwin later amended its cross-claims and third-party petitions in several of the pending tenant suits asserting independent causes of action against Velsicol for damages to property and injury to a business. The trial court severed these independent causes of action from the tenant suits and consolidated them into this case. Velsicol then moved for summary judgment, arguing that limitations and collateral estoppel barred the suit. The trial court eventually granted Velsicol's motion for summary judgment. The court of appeals reversed, holding that Velsicol's failure to negate the discovery rule as an exception to its limitations defense precluded summary judgment. Velsicol applied to this Court for writ of error.

■ A defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense. When the plaintiff pleads the discovery rule as an exception to limitations, the defendant must negate that exception as well. *Woods v. William M. Mercer, Inc.,* 769 S.W.2d 515, 518 n. 2 (Tex.1988).

■ Actions for damage to real property must be brought within two years of the injury. TEX. CIV. PRAC. & REM.CODE § 16.003. However, Judwin contends that the discovery rule exception defeats the limitations bar in the present action. The discovery rule represents an attempt to balance society's interest to have disputes either settled or barred within a reasonable time in situations in which it is difficult for the injured party to

---

1. According to the Agency for Toxic Substance and Disease Registry guidelines, "contamination" by chlordane occurs when interior chlordane levels exceed 0.5 micrograms per cubic meter. The record indicates that the general results were below the guidelines.

learn of the negligent act. *See Willis v. Maverick,* 760 S.W.2d 642, 645 (Tex.1988); *Safeway Stores, Inc. v. Certainteed Corp.,* 710 S.W.2d 544, 545 (Tex.1986). The discovery rule applies if: (1) the injury is inherently undiscoverable; and (2) the evidence of the injury is objectively verifiable. *Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 918 S.W.2d 453, 456 (Tex.1996).

Velsicol introduced uncontroverted evidence that in 1987 Judwin knew that chlordane residues in the interior of the apartments were responsible for adverse press coverage and several tenant lawsuits. Nevertheless, Judwin asserts that its cause of action against Velsicol did not accrue until the interior chlordane residues exceeded regulatory "contamination" levels. The court of appeals agreed, holding that "since chlordane levels detected in 1987 did not exceed the safety guidelines, a genuine issue of material fact was raised as to whether [Judwin] discovered [its] injury ... between 1987 and 1991." 928 S.W.2d at 132. Because Velsicol presented no summary judgment evidence indicating that Judwin had a duty to routinely test the Apartments' interiors after the 1987 occurrence, the court of appeals held that Velsicol did not negate the discovery rule. *Id.*

■ In support of the judgment below, Judwin attempts to draw an analogy to asbestos litigation cases. Some courts have held that when a building is known to have asbestos insulation, limitations does not begin to run until the owners discover concentrations of asbestos requiring abatement. *See MDU Resources Group v. W.R. Grace & Co.,* 14 F.3d 1274, 1279 (8th Cir.1994); *Farm Credit Bank v. United States Mineral Prods. Co.,* 864 F.Supp. 643, 650–51 (W.D.Ky.1994). In those cases, however, the owners sought only to recover damages incurred in abating the asbestos threat. *MDU Resources Group,* 14 F.3d at 1276; *Farm Credit Bank,* 864 F.Supp. at 644–46. Here, Judwin seeks to recover damages for lost income, rents, and profits, damage to business reputation,

attorney's fees, expenses incurred in defending multiple tenant lawsuits, loss of business opportunity and past and future loss in value to its investment, all due to tenant fears and adverse media coverage related to the chlordane application.

These damages arose in April 1987 as a result of the presence of chlordane, irrespective of the later detection of elevated interior concentrations amounting to "contamination." In that regard, this case is distinguishable from those seeking to recover merely the cost of abatement.[2] Accordingly, we hold the injuries of which Judwin complains were not inherently undiscoverable and thus the discovery rule does not save those claims from limitations.

■ Judwin next asserts fraudulent concealment as an independent ground which tolls the statute of limitations. As with the discovery rule, this doctrine tolls the statute until the fraud is discovered or could have been discovered with reasonable diligence. *See Estate of Stonecipher v. Estate of Butts,* 591 S.W.2d 806, 809 (Tex.1979). Judwin argues that Velsicol fraudulently concealed information about chlordane's "hazardous nature" in 1987, which may have prevented future contamination.

■ The undisputed summary judgment evidence shows that Judwin became acutely aware of chlordane's "hazardous nature" in 1987, when health concerns regarding chlordane use at the Apartments prompted extensive media coverage and tenant lawsuits. Thus we hold that Judwin may not rely on the tolling doctrine of fraudulent concealment.

Since Judwin's independent claims satisfy neither the discovery rule exception nor the requirements for fraudulent concealment, they are barred by the statute of limitations. Therefore, we need not consider Velsicol's separate assertion that collateral estoppel also bars these claims.

---

2. We express no opinion on when the limitations period would have commenced if only abatement damages had been sought, nor do we express an opinion on whether tenant reliance on the TDA that the interiors' levels of chlordane did not present an "acute risk," *see* Harold Scarlett, *Chlordane Risks Called Minimal,* Hous. Post, MAY 27, 1987, AT 7A, TOLLS LIMITATIONS IN THE UNDERLYING TENANT SUITS

In conclusion, because Velsicol's statute of limitations defense supports the trial court's summary judgment, the court of appeals erred in reversing the judgment and remanding the entire case for trial. Accordingly, this Court grants Velsicol's application for writ of error, and under Texas Rule of Appellate Procedure 170, without hearing oral argument, reverses the judgment of the court of appeals and renders judgment for Velsicol.