COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| OLGA GOMEZ ACOSTA, RAYMUNDO GOMEZ, OLGA GOMEZ CHAVEZ, ROSA MARIA GOMEZ ROMERO, GREGORIO OROZCO, FIDEL MANUEL OROZCO and LUZELENA MELENDEZ, | § <br> § <br> § <br> § <br> § | No. 08-16-00295-CV <br><br> Appeal from the <br><br> Probate Court No. 1 <br><br> of El Paso County, Texas |
| Appellants/Cross-Appellees, | § | (TC# 84-P01364) |
| v. | § | |
| VICTOR H. FALVEY, | § | |
| Appellee/Cross-Appellant. | § | |

# **O P I N I O N**

This is an appeal from a judgment granting Appellee Victor H. Falvey's motion for summary judgment and ordering that Appellants Olga Gomez Acosta, Raymundo Gomez, Olga Gomez Chavez, Rosa Maria Gomez Romero, Gregorio Orozco, Fidel Manuel Orozco, and Luzelena Melendez (collectively, "Acosta"[1]) take nothing on their claims against him. Those claims arise out of Falvey's legal representation of Remedios Gomez concerning the estate of her

---

[1] The record shows that Olga Gomez Acosta is the driving force behind this litigation and that the other Appellants have relied on her to act on her behalf in this matter as far back as 1986.

husband, Ramon Gomez, in 1984. Appellants are children or grandchildren of Remedios or Ramon, or both. They assert that they were wrongfully deprived of their interest in Ramon's community estate and separate real property as a result of Falvey preparing and filing a false small estate affidavit stating that Remedios was Ramon's sole heir.

Falvey filed a cross-appeal, asserting that the trial court erroneously, and perhaps unintentionally, denied his counterclaim for sanctions by ordering that all relief not expressly granted is denied. We affirm the take-nothing judgment on the ground of limitations and hold that Falvey's request for sanctions was abandoned.

## BACKGROUND

Ramon Gomez died intestate in 1984. Victor Falvey, an attorney, prepared and filed a small estate affidavit, which was signed and sworn to by Ramon's widow, Remedios Gomez. That affidavit stated that Remedios was the sole distributee, heir, devisee, or assign of Ramon's estate, and was entitled to 100% of that estate. The affidavit was filed on March 22, 1984, and an order approving it was signed the same day.

On March 25, 2015, over thirty-one years after the small estate affidavit was filed and approved, Acosta sued Falvey. Acosta alleged that Falvey breached fiduciary duties owed to Remedios and to the children of Remedios and Ramon because he knew that Ramon had children and thus, he either knew that the small estate affidavit was false, or he was grossly negligent in preparing it. As a further breach, Acosta alleged that Remedios received two real properties through Ramon's estate, which she then conveyed to Falvey's parents, one in 1985 and one in 1986. Acosta asserted that Falvey fraudulently concealed "the breach of the fiduciary relationship that Mr. Falvey established with Remedios and the heirs of Ramon and Remedios." In anticipation of a limitations defense, Acosta alleged that limitations was suspended because one plaintiff,

2

Raymundo Gomez, was in the armed forces from 1984 to 1997, and because of Falvey's fraudulent concealment. In a supplemental pleading, Acosta also asserted the discovery rule.

In response, Falvey filed an answer asserting that the suit was barred by limitations. He also filed a "Counterclaim and/or Motion for Sanctions" pursuant to chapter ten of the Texas Civil Practice and Remedies Code. In a supplemental answer, Falvey asserted an attorney-immunity defense.

In her second amended petition, Acosta alleged that Falvey had a fiduciary relationship only with Remedios, omitting her previous allegation that he also had a fiduciary relationship with Remedios's and Ramon's descendants. She alleged instead that Remedios defrauded the children and breached her fiduciary duty to them, and that Falvey aided and abetted Remedios in that fraud and breach. She further alleged that Falvey aided and abetted Remedios in converting Ramon's real property which was conveyed to Falvey's parents.

Falvey filed a motion for summary judgment asserting a variety of no-evidence and traditional grounds. We need only address the assertion that Acosta's suit is barred by limitations. It is undisputed that the small estate affidavit here at issue was filed and approved in March 1984, the affidavit was a matter of public record, and Acosta did not file suit until March 2015. As summary judgment evidence, Falvey filed excerpts from the depositions of each of the individual Appellants. These excerpts demonstrate that each of them relied on Olga Gomez Acosta to pursue this matter, and that none of them (other than Acosta, herself) made any inquiry concerning Ramon's estate until Raymundo Gomez sent Falvey an email in 2014.

Acosta testified that, in 1986, she went to the courthouse to search the public record because she had some questions in her mind concerning her father's affairs and thought he might have left a will. In her search, she discovered the small estate affidavit filed by Falvey. Also, in

3

1986, she told her brother, Raymundo, that something was not right and showed him the affidavit. In 1989, Acosta started talking to various attorneys about the matter but was unable to obtain their assistance, for unstated reasons. In 1994, Acosta filed an application for guardianship for Remedios and mentioned her concerns about the small estate affidavit to Rene Ordonez, the attorney representing her in the guardianship. Ordonez advised her to worry first about the guardianship matter and "we'll take care of the rest later on."

Gregorio Orozco Mota testified that Acosta told him in the 1990's that something was wrong with Ramon's estate. Raymundo Gomez similarly testified that Acosta had occasionally mentioned that something was wrong with the estate since 1986 or 1987, and that she said she had talked to several attorneys about it. He had asked Acosta about the matter two or three times a year since 1997 and believed since that time that there was something wrong that should be investigated. In 2014, Raymundo sent Falvey an email asking about the affidavit and why the children were not notified.

In response to Falvey's summary judgment motion, Acosta raised both the discovery rule and fraudulent concealment to overcome the limitations defense. In support, she filed her own affidavit acknowledging that she first had concerns about her father's estate in 1986 and discovered the small estate affidavit in that year.[2] She stated that she asked Falvey about her father's affairs and whether he had a will, but Falvey responded, "your mother came by herself and that is all I will tell you." Acosta stated that she made repeated inquiries to Falvey over the years and received the same response.

---

[2] Documents, including Acosta's affidavit, appear in the clerk's record before, and apparently separately from, the summary judgment response. Falvey objected to the trial court considering those documents because they were not submitted as summary judgment evidence and did not comply with Rule 166a(d) of the Texas Rules of Civil Procedure. The record does not, however, contain any ruling on those objections and it appears that the trial court considered Acosta's documents as summary judgment evidence. We will do the same. *See* TEX.R.APP.P. 33.1 (requiring a ruling on objection to preserve error).

Acosta also stated, "During the years following I contacted numerous lawyers to seek legal assistance to see if I could get some answers to the question of what happened to my father's property. I did the best I could to obtain legal assistance but was unable to do so." In April 2014, she spoke with attorney Sheral Maloy, who told her that the small estate affidavit was wrong in stating that Remedios was entitled to 100 percent of Ramon's estate. Rather, Ramon's children were entitled to his separate real property (subject to a life estate in Remedios) and one-half of his community property. Maloy also told Acosta that Falvey had committed wrongdoing in filing the small estate affidavit if he knew that Ramon had children. Acosta contends that Falvey knew that she was Ramon's daughter because he had represented her in her divorce.

Acosta also presented the affidavit of Sheral Maloy,[3] who asserted that she was designated as a testifying expert and opined that the small estate affidavit "would not by itself be sufficient to inform any children of Ramon Gomez that they had a claim on their father's estate." Maloy further opined that the children would have required "legal assistance from an attorney experienced in real estate law . . . ." In addition, Maloy stated that it was understandable that Acosta could not retain legal counsel because of the "nature and difficulty of the case," and that there was nothing more Acosta could have done to pursue any claims "[u]ntil she could get an attorney to review and render an opinion . . . ."

Falvey's motion for summary judgment was heard on September 21, 2016. On September 29, 2016, the trial court signed a judgment granting the motion without specifying the grounds and ordering a take-nothing judgment. The judgment further orders that all relief not expressly granted is denied.

## ISSUES

---

[3] Falvey objected to Maloy's affidavit on the grounds that she was not established to be an expert and that the affidavit was conclusory. Again, the record contains no ruling on the objections. *See* TEX.R.APP.P. 33.1.

5

Because the trial court's order granting summary judgment does not specify the grounds relied upon, this Court must affirm the summary judgment if any of the asserted grounds are meritorious. *Progressive Cty. Mut. Ins. Co. v. Kelley*, 284 S.W.3d 805, 806 (Tex. 2009). Acosta raises twenty-two issues. We conclude that the ground of limitations has merit and, therefore, we need only address those issues raised by Acosta that pertain to that ground. Those issues are: (1) whether Falvey sufficiently stated his grounds for summary judgment (Issues Two and Fifteen); (2) whether Acosta raised a fact issue on fraudulent concealment (Issues Five, Nine, Ten, Eleven, and Sixteen); and (3) whether Falvey established the bar of limitations in light of the discovery rule (Issues Eight, Nine, Thirteen, Fourteen, and Sixteen).

In a single cross-appeal issue, Falvey asserts that the trial court erred by denying his motion for sanctions when there was no pleading on file seeking that denial.

## STANDARD OF REVIEW

A movant for summary judgment must demonstrate that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). A reviewing court will take as true all evidence favorable to the nonmovant, and will make all reasonable inferences in the nonmovant's favor. *Id.*

## SUMMARY JUDGMENT BURDENS

"A defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense." *Id.* This requires that the defendant

> (1) conclusively prove when the cause of action accrued, and (2) negate the discovery rule, if it applies and has been pleaded or otherwise raised, by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered the nature of its injury.

*Id.* at 748. If the movant sustains this burden, the nonmovant must present summary judgment

6

evidence raising a fact issue in avoidance of the statute of limitations. *Id.*

On the other hand, "a party asserting fraudulent concealment as an affirmative defense to the statute of limitations has the burden to raise it in response to the summary judgment motion and to come forward with summary judgment evidence raising a fact issue on each element of the fraudulent concealment defense." *Id.* at 749.

## DISCUSSION

*Sufficiency of summary judgment grounds*

Acosta first contends that Falvey's summary judgment motion does not comply with Texas Civil Procedure Rule 166a, which requires that "[t]he motion for summary judgment shall state the specific grounds therefor." TEX.R.CIV.P. 166a(c). We disagree. Falvey's motion specifically states, "the claim of each plaintiff is subject to limitations because the alleged causes of action sued upon occurred in 1985 while the lawsuit was filed on March 25, 2015." The motion clearly and specifically asserts the statute of limitations as grounds for summary judgment. Acosta's assertion to the contrary is overruled.

*Statute of limitations*

A cause of action generally accrues "when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996); *see Archer v. Tregellas*, 566 S.W.3d 281, 290 (Tex. 2018). A claim of fraud or breach of fiduciary duty must be brought within four years after the claim accrues. TEX.CIV.PRAC.&REM.CODE ANN. § 16.004(a)(4), (5). A claim of conversion must be brought within two years after the claim accrues. TEX.CIV.PRAC.&REM.CODE ANN. § 16.003(a).

The wrongful act causing legal injury in this case is the March 22, 1984, filing of the small

7

estate affidavit stating that Remedios was entitled to 100 percent of Ramon's estate. In the absence of any tolling of limitations, Acosta's claims accrued on that date. Limitations on a claim for conversion thus expired on March 22, 1986, and limitations on claims for fraud or breach of fiduciary duty expired on March 22, 1988. Acosta filed suit on March 25, 2015. She contends, however, that limitations was tolled both by the doctrine of fraudulent concealment and the discovery rule. We address each in turn.

*Fraudulent concealment*

A party asserting fraudulent concealment to avoid the defense of limitations must prove that the defendant actually knew a wrong occurred, had a fixed purpose to conceal the wrong, and did conceal the wrong. *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 927 (Tex. 2011). But, under this doctrine, limitations is tolled only until "the plaintiff discovers the fraud or could have discovered the fraud with reasonable diligence." *Shah v. Moss*, 67 S.W.3d 836, 841 (Tex. 2001); *see Velsicol Chem. Corp. v. Winograd*, 956 S.W.2d 529, 531 (Tex. 1997). Further, a plaintiff is required to exercise diligence once she is "put on notice of the alleged harm of injury-causing actions." *Shell Oil*, 356 S.W.3d at 928. If readily accessible and publicly available information could have revealed the wrongdoing before limitations expired, the claims are barred. *Id.*; *see BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 67–68 (Tex. 2011).

In reviewing Acosta's summary judgment evidence, we first note that Sheral Maloy's opinions that "[t]he nature and difficulty of the case are such that it is readily understandable why [Acosta] was unable to retain legal counsel" and that Acosta did everything she could have done to pursue her claims, are conclusory and, therefore, constitute no evidence. *City of San Antonio v. Pollock*, 284 S.W.3d 809, 818 (Tex. 2009)(conclusory expert opinion is not probative evidence). This is so regardless of the fact that the trial court did not rule on Falvey's objections; a conclusory

8

statement cannot be considered probative evidence, even when there is no objection. *Id.*; *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 233 (Tex. 2004)("bare conclusions [] even if unobjected to[] cannot constitute probative evidence").

Acosta's own affidavit establishes that in 1986, she was not only aware of the existence and content of the small estate affidavit showing that Remedios was entitled to 100 percent of Ramon's estate, she was also aware that something about that situation was not right. This awareness was sufficient to trigger Acosta's duty to investigate, which she did, to a degree. *Shell Oil*, 356 S.W.3d at 928. As Acosta and Maloy acknowledge, all Acosta needed was to have an attorney with the relevant experience review the affidavit and inform her that it was wrong. While the advice of an attorney is not a public record in the sense that it is on file at the courthouse or other public building, we determine that it is nevertheless the type of information that is readily accessible and publicly available. *See Shell Oil*, 356 S.W.3d at 928; *Marshall*, 342 S.W.3d at 67–68. The question, then, is whether Acosta presented evidence raising a fact issue on whether she exercised reasonable diligence in obtaining this information. We conclude that she did not.

Acosta testified that she contacted nine attorneys concerning this matter, beginning in 1989, three years after she discovered the small estate affidavit. Two of those attorneys, Maloy and Acosta's present attorney, were not contacted until 2014. That means that the sum total of Acosta's efforts to obtain a legal opinion concerning the small estate affidavit, over the course of the twenty-five year period from 1989 to 2014, was to contact seven attorneys. That is an average of one attorney contact every three-and-a-half years. And given that Acosta does not state when any of these contacts occurred, it is possible that she contacted all seven attorneys in 1989 and then did not approach any others until she contacted Maloy and her present attorney in 2014. Further, with one exception, Acosta does not identify whether any of the seven attorneys she contacted had

9

any relevant experience, what inquiry she made of them, what response they made to her, whether she showed them the small estate affidavit, or why she was unable to obtain their assistance. Without these details, her statement that she was unable to obtain legal assistance is a mere conclusion that does not constitute any evidence of diligence. *See Coastal Transp*., 136 S.W.3d at 233 (bare conclusions are not evidence).

The one instance in which the record shows the expertise, inquiry, and response of an attorney contacted by Acosta does not aid her cause. In 1994, Acosta was represented in a guardianship proceeding by attorney Rene Ordonez. In the course of that representation, Acosta mentioned to Ordonez her concerns about Falvey and her father's estate. Ordonez responded, "Right now, let's just worry about your mom's situation on being sick, and we'll take care of the rest later on." Nothing about that exchange indicates that Ordonez refused to assist Acosta with the small estate affidavit issue, and nothing in the record shows that Acosta exercised any diligence in following up to have Ordonez take care of that matter "later on," as he stated he would.

Finally, we note that the undisputed evidence demonstrates that none of the other Appellants exercised any diligence at all in relation to their claims. Rather, they all relied on Acosta. Raymundo Gomez testified that he thought something was wrong as early as 1997, but he took no action until 2014, when he sent an email inquiry to Falvey. His only explanation for seven years of inaction was that he was busy at work and was relying on Acosta.

The summary judgment record conclusively establishes that, in the exercise of reasonable diligence, Acosta could have discovered the fraud she now asserts in relation to the small estate affidavit by 1994 at the latest. If fraudulent concealment tolled limitations at all, that tolling expired and limitations commenced in 1994. *See Shah*, 67 S.W.3d at 841; *Velsicol*, 956 S.W.2d at 531. Acosta did not file suit for another twenty years. Her claims, which are governed by the

two- and four-year statutes of limitations, are time-barred as a matter of law. *See* TEX.CIV.PRAC.&REM.CODE ANN. §§ 16.003(a), 16.004(a)(4), (5).

*Discovery rule*

In the limited situations in which the discovery rule applies, "accrual is tolled until a claimant discovers or in the exercise of reasonable diligence should have discovered the injury and that it was likely caused by the wrongful acts of another." *Childs v. Haussecker*, 974 S.W.2d 31, 40 (Tex. 1998); *see Marshall*, 342 S.W.3d at 65. We have determined above that the summary judgment record conclusively establishes that, in the exercise of reasonable diligence, Acosta should have made this discovery in 1994, at the latest. For the reasons previously stated, Acosta's claims, which were filed twenty years after those claims accrued, are barred by limitations as a matter of law.

The summary judgment record conclusively establishes that Acosta's claims accrued in 1994, at the latest, and that the lawsuit filed in 2015 is time-barred. The trial court did not err by granting Falvey's motion for summary judgment on the ground of limitations.

*Denial of Falvey's request for sanctions*

Under Chapter 10 of the Texas Civil Practice and Remedies Code, signing a pleading "constitutes a certificate by the signatory that to the signatory's best knowledge, information, and belief, formed after reasonable inquiry: . . . each claim, defense, or other legal contention in the pleading or motion is warranted by existing law . . . ." TEX.CIV.PRAC.&REM.CODE ANN. § 10.001(2). The statute further provides that a party "may make a motion for sanctions" for violations of Section 10.001. *Id.* at § 10.002(a).

Falvey filed a pleading entitled, "Counterclaim and/or Motion for Sanctions," in which he alleged that Acosta's counsel had violated Section 10.001 by filing pleadings that were not

11

warranted by existing law. Falvey requested sanctions against Acosta's counsel in the amount of $50,000.

The final judgment in this case recites that all relief requested and not expressly granted is denied, and that the judgment disposes of all claims and parties and is final and appealable. Falvey contends that, by including this language in the judgment, the trial court implicitly denied his counterclaim for sanctions, and that this denial was improper because no party had requested it. Falvey's contention fails, though, because his request for Chapter 10 sanctions is not a counterclaim.

Chapter 10 does not create an independent cause of action for damages. *Skyline Commercial, Inc. v. ISC Acquisition Corp.*, No. 05-17-00028-CV, 2018 WL 4039863, at *9 (Tex.App.—Dallas Aug. 23, 2018, pet. denied)(mem. op. on reh'g); *see Mantri v. Bergman*, 153 S.W.3d 715, 717 (Tex.App.—Dallas 2005, pet. denied)("Nowhere does chapter 10 permit a party to bring an independent cause of action for sanctions."). Rather, it specifically provides that a party may file a "motion" for sanctions. *Mantri*, 153 S.W.3d at 717; TEX.CIV.PRAC.&REM.CODE ANN. § 10.002(a).

"Unlike a pending cause of action, a pending motion for sanctions does not make interlocutory an otherwise-final judgment." *Mantri*, 153 S.W.3d at 717; *see Lane Bank Equip. Co. v. Smith S. Equip., Inc.*, 10 S.W.3d 308, 312 (Tex. 2000)("a judgment does not have to resolve pending sanctions issues to be final"). And, more specifically, "[a] summary judgment that disposes of all the issues presented in the pleadings is a final judgment and is not made interlocutory by a pending motion for sanctions." *Harrell v. Hartman*, No. 07-03-0290-CV, 2005 WL 729033, at *2 (Tex.App.—Amarillo Mar. 29, 2005, no pet.)(mem. op.). If, however, a motion for sanctions remains pending when a final judgment is signed, the trial court retains jurisdiction

12

to rule on that motion until the expiration of its plenary power. *Mantri*, 153 S.W.3d at 717.

The trial court correctly determined that its order granting a take-nothing summary judgment on all of Acosta's claims was a final judgment. Falvey's motion for sanctions did not prevent that judgment from being final, nor was that motion denied, even implicitly, by that judgment. *See Lane Bank*, 10 S.W.3d at 312; *Mantri*, 153 S.W.3d at 717. On the contrary, the sanctions motion remained pending until the expiration of the trial court's plenary jurisdiction. *See Mantri*, 153 S.W.3d at 717. As movant, it was Falvey's responsibility to bring his motion for sanctions to the attention of the trial court and to obtain a ruling while the court retained jurisdiction. *See id.*; TEX.CIV.PRAC.&REM.CODE ANN. § 10.002. The record does not reflect that he did so. By failing to pursue the motion for sanctions, Falvey effectively abandoned it. Falvey's cross-appeal issue is overruled.

## CONCLUSION

The trial court did not err by granting summary judgment based on the statute of limitations and by ordering that Appellants Olga Gomez Acosta, Raymundo Gomez, Olga Gomez Chavez, Rosa Maria Gomez Romero, Gregorio Orozco, Fidel Manuel Orozco, and Luzelena Melendez take nothing on their claims against Victor H. Falvey. The trial court also did not err in regard to Falvey's motion for sanctions because that motion was never presented to the court for ruling.

Having overruled Appellants/Cross-Appellees' Issues Two, Five, Eight, Nine, Ten, Eleven, Thirteen, Fourteen, Fifteen, Sixteen,[4] and Appellee/Cross-Appellant's sole cross-issue, the judgment of the trial court is affirmed.

June 21, 2019

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Palafox,JJ.

---

[4] Our resolution of this appeal does not require that we address Appellants/Cross-Appellees' remaining issues. TEX.R.APP.P. 47.1.