**RAS GROUP, INC. and Eagle Credit Resources, L.L.C., Appellants & Cross Appellees,**

v.

**RENT–A–CENTER EAST, INC., Rent–A–Center West, Inc., Rent–A–Center Texas, L.P., and National Loan Exchange, Appellees & Cross Appellants.**

No. 05–08–00828–CV.

Court of Appeals of Texas, Dallas.

Nov. 8, 2010.

Rehearing Overruled April 15, 2011.

Richard A. Rohan, Carrington, Coleman, Sloam & Blumenthal, LLP, Dallas, TX, John J. Carwile, Atkinson, Haskins, Nellis, Brittingham, Tulsa, OK, Dennis N. Ryan, Andrews Kurth, L.L.P., Dallas, TX, for Appellants.

Christopher J. Petri, Byron, Gerber, Petri & Kalb, LLC, Edwardsville, IL, David Jacob Drez, Haynes and Boone, LLP, Fort Worth, TX, D. Bradley Dickinson, Dickinson & Associates, P.C., Dallas, TX, for Appellees.

Before Justices FITZGERALD, MURPHY, and THOMAS.[1]

## OPINION

Opinion By Chief Justice THOMAS (Retired).

This case involves Eagle Credit Resources, L.L.C and RAS Group, Inc.'s purchase of "charged-off" accounts of Rent–A–Center East, Inc., Rent–A–Center West, Inc., and Rent–A–Center Texas, L.P. (collectively, Rent–A–Center), in a sale arranged by National Loan Exchange. When Eagle Credit and RAS were unable to collect satisfactorily on the accounts, they sued Rent–A–Center and National Loan Exchange for breach of contract and fraud. Rent–A–Center and National Loan Exchange filed counterclaims for breach of contract and fraud. The parties filed competing motions for summary judgment, which the trial court granted, rendering a take-nothing judgment on all the claims. Each party now appeals the grant of the other parties' motions for summary judgment. We affirm the trial court's judgment.

## BACKGROUND

Rent–A–Center rents merchandise to customers. Some customers did not pay according to the rental agreement and did not return the merchandise. If a customer's account was delinquent for sixty to ninety days and the customer did not return the merchandise, the account was "charged off." By 2004, Rent–A–Center had charged-off accounts with unpaid balances of about $500 million.

In 2004, Rent–A–Center contracted with National Loan Exchange to help package and market charged-off accounts. National Loan Exchange created an information package for entities interested in purchasing Rent–A–Center's accounts. On December 30, 2004, Eagle Credit and Rent–A–Center signed the purchase-and-sale agreement (the Agreement) in which Eagle Credit paid about $3 million for 34,440 of the charged-off accounts, which had an unpaid balance of about $55 million. On January 19, 2005, Eagle Credit sold 15,460 of the accounts to RAS for about $1.4 million. Rent–A–Center knew Eagle Credit intended to resell some of the accounts, and Rent–A–Center approved the sale of the accounts to RAS.

Eagle Credit and RAS attempted to contact debtors on the accounts. From an initial mailing RAS sent to about 10,000 of the debtors, 8002 of the letters were returned for incorrect addresses. Eagle Credit experienced similar difficulty in collecting on the accounts. By March 2007, Eagle Credit and RAS had collected only about $3600 and $14,000, respectively, before they gave up trying to collect on the accounts.

Eagle Credit and RAS sued Rent–A–Center for breach of contract and unjust enrichment, and they sued Rent–A–Center and National Loan Exchange for fraud, fraudulent inducement, and negligent misrepresentation for inaccuracies in the information package and the Agreement. RAS also sued Eagle Credit for breach of their Agreement,[2] and Eagle Credit sued Rent–A–Center for indemnification under the Agreement for any liability Eagle

1. The Honorable Linda Thomas, Chief Justice (Ret.), Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment.

2. The contract between RAS and Eagle Credit was virtually identical to that between Eagle Credit and Rent–A–Center.

Credit might have to RAS. Rent–A–Center and National Loan Exchange sued Eagle Credit and RAS alleging they breached the Agreement by bringing suit and committed fraud and fraud in the inducement by relying on the due-diligence materials when they represented in the Agreement that they would not rely on any information outside the Agreement. With the exception of RAS's claims against Eagle Credit, the defendants filed motions for summary judgment on the claims and counterclaims. The trial court granted those motions for summary judgment, rendering a take-nothing judgment on all claims and counterclaims. RAS then nonsuited its claims against Eagle Credit.[3]

## STANDARD OF REVIEW

■ The standard for reviewing a traditional summary judgment is well established. *See* Tex.R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). Defendants who move for summary judgment must show the plaintiffs have no cause of action. Defendants may meet this burden by either disproving at least one essential element of each theory of recovery or conclusively proving all elements of an affirmative defense. *See Wornick Co. v. Casas*, 856 S.W.2d 732, 733 (Tex.1993). A matter is conclusively established if ordinary minds cannot differ as to the conclusion to be drawn from the evidence. *See Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex.

1982). After the movants have established a right to summary judgment, the burden shifts to the nonmovants to present evidence creating a fact issue. *See Kang v. Hyundai Corp.*, 992 S.W.2d 499, 501 (Tex. App.-Dallas 1999, no pet.).

We review a no-evidence summary judgment under the same legal sufficiency standard used to review a directed verdict. *See* Tex.R. Civ. P. 166a(i); *Gen. Mills Rests., Inc. v. Tex. Wings, Inc.*, 12 S.W.3d 827, 832–33 (Tex.App.-Dallas 2000, no pet). Thus, we must determine whether the nonmovant produced more than a scintilla of probative evidence to raise a fact issue on the material questions presented. *Gen. Mills*, 12 S.W.3d at 833. When analyzing both traditional and no-evidence summary judgments, we consider the evidence in the light most favorable to the nonmovant. *See Nixon*, 690 S.W.2d at 549 (traditional summary judgment); *Gen. Mills*, 12 S.W.3d at 833 (no-evidence summary judgment).

## EAGLE CREDIT AND RAS'S ISSUES

### Breach of Contract

■ In their first issues,[4] Eagle Credit and RAS assert the trial court erred in granting Rent–A–Center's motion for summary judgment on their breach-of-contract claims. Rent–A–Center's grounds for summary judgment included no evidence that it breached the Agreement.

---

3. Some of Rent–A–Center's charged-off accounts were bought by Worldwide Asset Purchasing, L.L.C. under an agreement similar to that in this case. Worldwide also experienced difficulties collecting on the accounts, and it sued Rent–A–Center. Its litigation against Rent–A–Center involved many of the same claims and counterclaims presented in this case, the litigation was conducted in the same trial court, and, as in this case, the trial court rendered summary judgment for the defendants on the claims and counterclaims.

The parties in that case appealed, and many of their issues and arguments mirror the issues and arguments before us in this case. We affirmed the trial court's judgment in that case. *See generally Worldwide Asset Purchasing, L.L.C. v. Rent–A–Center, Inc.*, 290 S.W.3d 554 (Tex.App.-Dallas 2009, no pet.).

4. RAS and Eagle Credit filed separate briefs, but their issues and arguments generally align.

## Right to Transfer the California Accounts

In section 8.1 of the Agreement, Rent–A–Center stated it "is the sole owner of all right, title and interest in and to the Assets, subject to any and all liens and encumbrances, and has the right to transfer Seller's interest therein to Buyer on the terms and conditions set forth herein." Eagle Credit and RAS assert Rent–A–Center breached this provision for some of the charged-off accounts originating in California because of a class-action settlement agreement Rent–A–Center entered into. In that agreement, Rent–A–Center and the other parties to the settlement agreement promised "that no portion of any claims, debts, or liabilities, or any other matter released herein, has been or will be directly or indirectly assigned or transferred to any other person or entity." Eagle Credit and RAS argue this provision prohibited Rent–A–Center from selling its charged-off California accounts.

According to the settlement agreement, the California class action against Rent–A–Center involved the class of "all persons who entered into rental-purchase agreements ... with Rent–A–Center, within the State of California, at any time between February 1, 1999 and January 31, 2002...." The suit alleged claims that Rent–A–Center violated the "Karnette Act,"[5] the "CLRA,"[6] and the "Unfair Competition Law."[7] The settlement agreement stated the class released Rent–A–Center from "all claims, disputes, liabilities, causes of action, and demands" arising out of the claims made by the class in the litigation or "the contents and/or substance of the rental-purchase agreements...." In paragraph I.2, Rent–A–Center released the class from "any and all causes of action, claims and demands ... arising out of or relating in any way to the institution, prosecution or resolution of the Litigation...." Paragraph I.2 also provided,

> Nothing in the release in this Paragraph I.2 shall operate to extinguish, release, amend or otherwise modify the legal obligations of any Settlement Class Member under any rental-purchase agreement between a Settlement Class Member and any Defendant, to the extent that such agreement was in existence as of the date of this Settlement Agreement.

As these provisions show, the class action concerned claims that Rent–A–Center failed to follow certain California consumer-protection statutes. The class members released claims they had concerning the rental-purchase agreements, but Rent–A–Center did not release the class members from any claims it had against them for enforcement of the rental-purchase agreements. Thus, the "claims, debts, or liabilities, or any other matter released herein" did not involve Rent–A–Center's rights under the rental-purchase agreements, and the settlement agreement did not prohibit Rent–A–Center from transferring its California charged-off accounts.

We conclude the trial court did not err in granting Rent–A–Center's motion for summary judgment on the claim that Rent–A–Center breached section 8.1 of the agreement.

## Accuracy of Account Information

█ Eagle Credit and RAS assert Rent–A–Center breached section 8.2 of the sales agreement, which provided:

---

**5.** *See* Karnette Rental–Purchase Act, CAL. CIV. CODE §§ 1812.620–.649.

**6.** *See* Consumers Legal Remedies Act, CAL CIV.CODE §§ 1750–1784.

**7.** *See* CAL. BUS. & PROF.CODE §§ 17200–17210.

*Accuracy of Asset Information.* The information with respect to the Assets provided on the Asset Schedule, including the electronic data accompanying and supporting the Asset Schedule, was prepared from Seller's books and records and, to the actual knowledge of Seller, is true and correct in all material respects.

Eagle Credit and RAS assert Rent–A–Center breached this provision because the information provided for the majority of account debtors was inaccurate, incomplete, and included thousands of incorrect addresses, phone numbers, and social security numbers. Eagle Credit and RAS argue that because section 8.2 required that the information be "true and correct in all material respects," the provision meant that information regarding the addresses, telephone numbers, social security numbers, etc. be factually accurate. Rent–A–Center argues the provision meant that the information in the Asset Schedule truly and correctly reflected the information in its books and records, not that the information itself was factually true and correct.

We addressed this same issue involving the identical contractual provision in *Worldwide:*

> We cannot agree with the Worldwide Purchasers that section 8.2 requires Rent–A–Center to provide accurate, up to date information as to each asset. The plain meaning of the language in section 8.2 ties the representation of accuracy only to the information as it is in the books and records. After all, it is not the books and records that were directly supplied by Rent–A–Center,

rather it was a summary of information from those books and records. That summary was set out in the "asset schedule" and the "electronic data accompanying" that schedule, and it was represented that the data and information was within Rent–A–Center's "actual knowledge" as set out in those books and records that was true and correct "in all material respects." Had they agreed to current, materially accurate data as argued by the Worldwide Purchasers, they would have so stated. We decline to supply such language.

> Additionally, we conclude the Worldwide Purchasers' claim that current information was required as to each asset is rendered ineffective when section 8.2 is read in conjunction with sections 8.4 and 9.3. In section 8.4, Worldwide Asset acknowledged the assets were being sold "AS–IS" and "WITH ALL FAULTS." In section 9.3, Worldwide Asset acknowledged the assets may be "unenforceable."

*Worldwide,* 290 S.W.3d at 563–64.[8] For the reasons expressed in *Worldwide,* we conclude the trial court did not err in granting Rent–A–Center's motion for summary judgment on the claims that it breached section 8.2 of the Agreement.

■ Eagle Credit and RAS also argue Rent–A–Center breached section 8.3 of the Agreement due to the inaccuracy of the information about the accounts Rent–A–Center provided. Section 8.3 stated:

*Due Diligence Material.* The Assets being sold pursuant to this Agreement are materially the same in all respects

---

8. Sections 8.4 and 9.3 in the *Worldwide* agreement are identical to those provisions in this case. Section 8.4 is a representation by Rent–A–Center that the assets were sold "as is" and "with all faults" with no express or implied representations, warranties, or guaranties about the assets, including whether they were enforceable. Section 9.3 was "Buyer's" acknowledgment that the assets may have be unenforceable, have no value, and that the sale may result in an a total loss of the purchase price. *See Worldwide,* 290 S.W.3d at 562.

as the Assets furnished to Buyer for purposes of conducting due diligence.

Eagle Credit and RAS argue Rent–A–Center breached this provision because the due-diligence materials indicated 489 accounts were "skips," when in fact at least 8000 accounts were skips. RAS also argues Rent–A–Center breached the provision because the due-diligence materials indicated the account information was ninety-five percent complete as to addresses and eighty-two percent complete as to the primary telephone numbers of the account debtors. Rent–A–Center presented evidence that the information concerning the skips, addresses, and telephone numbers in the due-diligence materials was the same information delivered after the sale. Eagle Credit and RAS did not establish that the information in the due-diligence materials was different from the information presented with the transfer of the accounts. Eagle Credit and RAS presented evidence that the information was inaccurate by showing the number of skips was actually higher and the number of correct addresses and telephone numbers was in fact lower than was represented in the due-diligence materials. However, as we stated in *Worldwide*, "Section 8.3 addresses the 'assets being sold,' but does not make any representation as to the accuracy or completeness of the information." *Worldwide*, 290 S.W.3d at 564.

As in *Worldwide*, we conclude the trial court did not err in granting Rent–A–Center's motion for summary judgment on the claims that it breached section 8.3 of the Agreement.

### *Eagle Credit's Indemnity Action*

■ Eagle Credit also alleged Rent–A–Center breached its contractual duty to indemnify Eagle Credit in RAS's suit against Eagle Credit. Rent–A–Center asserted in its motion for summary judgment that the claim for indemnity was premature because no judgment of liability had

been entered against Eagle Credit when the trial court ruled on the motion for summary judgment. Eagle Credit argued that, although its indemnity claim may not have accrued, the indemnity claim could be brought before judgment in the same suit where liability is sought against the indemnitee. *See Ingersoll–Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 210 (Tex. 1999). However, after RAS nonsuited its claims against Eagle Credit, no potential liability subject to the indemnity provision remained in the case. Accordingly, even if it was error for the court to grant the motion for summary judgment on the indemnity claim while RAS's claims against Eagle Credit were still pending, the error became harmless and did not cause the rendition of an improper judgment after RAS nonsuited its claims against Eagle Credit. *See* TEX.R.APP. P. 44.1(a)(1).

We conclude the trial court did not err in granting judgment for Rent–A–Center on Eagle Credit and RAS's breach-of-contract causes of action. We overrule Eagle Credit and RAS's first issues. Because of our resolution of the first issue, we do not reach Eagle Credit and RAS's second issues asserting the trial court erred in granting Rent–A–Center's motion for summary judgment on the ground that Eagle Credit and RAS waived and released their breach-of-contract claims.

In their fifth issues, Eagle Credit and RAS assert the trial court erred in granting Rent–A–Center and National Loan Exchange's motions for summary judgment on Eagle Credit and RAS's claims for attorney's fees for breach-of-contract. The arguments for reversing the trial court's judgment are contingent upon our sustaining Eagle Credit and RAS's first or second issues. Because we have overruled or not reached those issues, we likewise overrule their fifth issues.

### Fraud, Fraudulent Inducement, and Negligent Misrepresentation

██ In their third issues, Eagle Credit and RAS assert the trial court erred in granting Rent–A–Center and National Loan Exchange's motions for summary judgment on Eagle Credit and RAS's causes of action for fraud, fraudulent inducement, and negligent misrepresentation. Justifiable reliance is an element of all three causes of action. *See Haase v. Glazner,* 62 S.W.3d 795, 798–99 (Tex.2001) ("[W]ith a fraudulent inducement claim, the elements of fraud must be established as they relate to an agreement between the parties."); *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.,* 51 S.W.3d 573, 577 (Tex.2001) (element of fraud that "the other party actually and justifiably relied upon the representation"); *Fed. Land Bank Ass'n v. Sloane,* 825 S.W.2d 439, 442 (Tex.1991) (element of negligent misrepresentation that "the plaintiff suffers pecuniary loss by justifiably relying on the representation"). Rent–A–Center and National Loan Exchange moved for summary judgment on these tort claims on the ground that Eagle Credit and RAS disclaimed reliance on any misrepresentations as a matter of law.

Eagle Credit and RAS alleged they were *fraudulently induced to enter into the* Agreement by Rent–A–Center's false representations, including: (a) the charged-off accounts had not been serviced, (b) Rent–A–Center had used its best efforts to remove accounts in pending litigation, (c) the low number of "skip" accounts, and (d) the method used for calculating the unpaid balance for the accounts. They asserted National Loan Exchange misrepresented that there had not been any collection attempts made on the accounts, and National Loan Exchange's president, David Ludwig, misrepresented the quality and character of the accounts by stating they

were so good he wanted to buy more of them for himself.

Eagle Credit and RAS assert the Agreement provided they were entitled to rely on Rent–A–Center's representations. In their motions for summary judgment, Rent–A–Center and National Loan Exchange asserted that Eagle Credit and RAS could not prove justifiable reliance on any misrepresentations because the Agreement contained "as is" disclaimer-of-reliance provisions stating the buyers were not relying on any pre-transfer statements by Rent–A–Center and National Loan Exchange. The provision in the Agreement concerning this issue is Article IX:

### ARTICLE IX

### BUYER'S EVALUATION AND ACCEPTANCE OF
### RISK OF ASSETS SOLD "AS IS"

Buyer hereby represents, warrants, acknowledges and agrees to the following:

Section 9.1. *Independent Evaluation.* Buyer's bid for and decision to purchase the Assets pursuant to this Agreement is and was based upon Buyer's own independent evaluation of information deemed relevant to Buyer, including, but not limited to, the information made available by Seller or Advisor to all potential bidders for the Asset, and Buyer's independent evaluation of related information. Buyer acknowledges and agrees that, while some information concerning the Assets was made available to Buyer for review prior to the Sale, such information, through no fault of Seller, may not be complete. If Seller, an asset servicer, servicing agent or any of Seller's contractors or employees failed to deliver to Seller or Advisor any or all of the Asset information in such servicer's or employee's possession, then neither

Seller nor Advisor shall be liable for the failure to include such Asset information in the materials made available for review by prospective bidders prior to the Sale. Buyer has relied solely on it own investigation and it has not relied upon any oral or written information provided by Seller and/or Advisor or its personnel or agents and acknowledges that no employee or representative of Seller and/or Advisor has been authorized to make, and that Buyer has not relied upon, any written statements other than those specifically contained in this Agreement.

Section 9.2. *Due Diligence.* Buyer has been urged by Advisor to conduct such due diligence review and analyses of the information provided by Seller in order to make a complete informed decision with respect to the purchase and acquisition of the Assets.

Section 9.3 *Economic Risk.* Buyer acknowledges that the Assets may have limited or no liquidity and Buyer has the financial wherewithal to own the Assets for an indefinite period of time and to bear the economic risk of an outright purchase of the Assets and a total loss of the Purchase Price for the Assets. Buyer acknowledges that the Assets may be Unenforceable Assets.

Article VIII of the Agreement, Rent–A–Center's representations, warranties, and covenants, also included "as is" and "with all faults" provisions:

Section 8.4. *No Other Representations or Warranties.* EXCEPT AS PROVIDED IN SECTIONS 8.1, 8.2, and 8.3, THE ASSERTS ARE BEING SOLD *"AS IS"* AND *"WITH ALL FAULTS"*, WITHOUT ANY REPRESENTATION OR WARRANTY WHATSOEVER, AND SELLER SPECIFICALLY DISCLAIMS ANY WARRANTY, GUARANTY OR REPRESENTATION, ORAL OR WRITTEN, PAST OR PRESENT, EXPRESS OR IMPLIED, CONCERNING THE ASSETS, THE STRATIFICATION OR PACKAGING OF THE ASSETS. SELLER MAKES NO REPRESENTATION OR WARRANTY AS TO THE NUMBER OF UNENFORCEABLE ASSET(S) WHICH MAY BE INCLUDED IN THIS SALE.

Eagle Credit and RAS assert the "as is" and waiver-of-reliance clauses do not preclude a claim for fraudulent inducement of the contract containing them. They acknowledge that the Texas Supreme Court held in *Schlumberger Technology Corp. v. Swanson,* 959 S.W.2d 171 (Tex.1997), that a waiver-of-reliance clause could bar a fraudulent-inducement claim. *Id.* at 181. They argue that this "narrow exception ... applies only to an agreement signed to end an ongoing dispute that has embroiled the parties." In *Forest Oil Corp. v. McAllen,* 268 S.W.3d 51 (Tex.2008), the supreme court rejected this argument about the limited nature of *Schlumberger* and noted the court's reasoning in *Schlumberger* "applies to contracts generally, and we see no reason to accept [respondent's] restrictive interpretation." *Id.* at 58 n. 25. In explaining the *Schlumberger* decision, the court stated,

Essentially, *Schlumberger* holds that when knowledgeable parties expressly discuss material issues during contract negotiations but nevertheless elect to include waiver-of-reliance and release-of-claims provisions, the Court will generally uphold the contract. An all-embracing disclaimer of any and all representations, as here, shows the parties' clear intent.

*Id.* at 58. The court noted its statement in *Schlumberger* that "a disclaimer of reliance will not always bar a fraudulent inducement claim," but clarified that it was "merely acknowledging that facts may exist where the disclaimer lacks 'the requi-

site clear and unequivocal expression of intent necessary to disclaim reliance' on the specific representations at issue." *Id.* at 60 (quoting *Schlumberger*, 959 S.W.2d at 181, 179). The court stated that determination of whether a waiver of reliance is binding requires examination of the contract itself and the totality of the surrounding circumstances. *Id.* The court then set out the facts that were the most relevant to its decision in *Schlumberger* that the waiver of reliance was binding and precluded a fraudulent-inducement claim:

1. the terms of the contract were negotiated, rather than boilerplate, and during negotiations the parties specifically discussed the issue which has become the topic of the subsequent dispute;

2. the complaining party was represented by counsel;

3. the parties dealt with each other in an arm's length transaction;

4. the parties were knowledgeable in business matters; and

5. the release language was clear.

*Id.* at 60.

The record in this case established that both Eagle Credit and RAS were experienced, sophisticated buyers of debt. They dealt with each other and with National Loan Exchange and Rent–A–Center in arm's-length transactions. A witness for RAS, Howard Kaufman, testified RAS and National Loan Exchange had numerous prior transactions in which they had worked out the language for their contracts, and Kaufman would have alerted someone only if the language had been different. Charles Welsh, a witness for Eagle Credit, testified that he and others negotiated the Agreement on behalf of Eagle Credit and could have requested to have certain language included in the Agreement. Rent–A–Center's in-house counsel, Dawn Wolverton, testified sections 8.2. and 8.3 of the Agreement were

added in the negotiations. Concerning the parties' representation by counsel, witnesses for Eagle Credit and RAS testified they had attorneys available to review the Agreement, but they could not remember whether the Agreement was referred to the attorneys for their review. Thus, although neither Eagle Credit and RAS may have used attorneys in the transactions, they both had attorneys they regularly used and had the opportunity to consult with them. The language in the "as is" and disclaimer-of-reliance clauses was clear and, "by its plain language, demonstrates a clear and unequivocal expression of the parties' intent to disclaim reliance." *See Worldwide*, 290 S.W.3d at 569.

The summary judgment record in this case establishes that "knowledgeable parties expressly discuss[ed] material issues during contract negotiations but nevertheless elect[ed] to include waiver-of-reliance and release-of-claims provisions." *Forest Oil Corp.*, 268 S.W.3d at 58. Article IX and section 8.4 conclusively establish lack of reliance by Eagle Credit and RAS. Accordingly, we conclude the trial court did not err in granting Rent–A–Center and National Loan Exchange's motions for summary judgment on Eagle Credit and RAS's fraud, fraudulent inducement, and negligent misrepresentation claims. We overrule Eagle Credit and RAS's third and fourth issues.

## RENT–A–CENTER AND NATIONAL LOAN EXCHANGE'S CROSS–ISSUES

National Loan Exchange brings three cross-issues asserting the trial court erred in granting Eagle Credit and RAS's motions for summary judgment on its counterclaims for breach of contract and for attorney's fees. Rent–A–Center brings six cross-issues asserting the trial court erred in granting Eagle Credit and RAS's mo-

tions for summary judgment on its counterclaims for breach of contract, fraud, fraudulent inducement, indemnity, and attorney's fees.

■ In the breach-of-contract and tort claims, the only actual damages Rent–A–Center and National Loan Exchange pleaded and asserted in their responses to the motions for summary judgment were their attorney's fees in defending against Eagle Credit and RAS's claims. On their claims for attorney's fees, Rent–A–Center and National Loan Exchange alleged they were entitled to attorney's fees under section 38.001(8) of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 38.001(8) (West 2008). Eagle Credit and RAS's grounds for summary judgment included the ground that Rent–A–Center and National Loan Exchange had no evidence of attorney's fees as actual damages[9] and that Rent–A–Center and National Loan Exchange were not entitled to recover attorney's fees under section 38.001(8).

■ Ordinarily, a party may recover attorney's fees only as provided by statute or by contract. *Gulf States Util. Co. v. Low,* 79 S.W.3d 561, 567 (Tex.2002); *Worldwide,* 290 S.W.3d at 570. In this case, section 10.1 of the Agreement required Buyer and its assignees to hold Seller harmless from any "losses or damages" it may suffer as a result of a claim incurred or suffered due to Buyer's and assignees' breach of the provisions of the Agreement. The Agreement's definition of "Claim" included "loss, damage, liability, cost and expense," and it stated "expense" included reasonable attorney's fees.[10] It did not state that "loss" or "damage" included attorney's fees. We conclude the Agreement does not authorize Rent–A–Center and National Loan Exchange to recover their attorney's fees as actual damages in defending against Eagle Credit and RAS's claims. *See Worldwide,* 290 S.W.3d at 572.

■ Attorney's fees are not normally recoverable as actual damages, but there are two situations where they may be considered actual damages. In a legal malpractice case, the plaintiff's damages may include the attorney's fees paid to the defendant-attorney in the underlying case. *See Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.,* No. 07–0818, 2009 WL 3494978, at *13 (Tex. Oct. 30, 2009). Also, when the defendant's tort requires a party to protect its own interests by bringing or defending an action against a third party, the plaintiff may recover from the defendant the attorney's fees incurred in the action against the third party. *See G.R.A.V.I.T.Y. Enters., Inc. v. Reece Supply Co.,* 177 S.W.3d 537, 546–47 (Tex.App.-Dallas 2005, no pet.). Neither situation is present in this case. Accordingly, there was no evidence that Rent–A–Center or National Loan Exchange's attorney's fees were actual damages.

---

**9.** In moving for summary judgment on breach-of-contract claims, Eagle Credit and RAS asserted, *inter alia,* "Rent–A–Center has asserted breach of contract claims in a blatant attempt to recover attorneys' fees. However, there is no evidence to support them." In moving for summary judgment on the tort claims, Eagle Credit and RAS asserted, "There is no evidence that [Eagle Credit or RAS] ... made a misrepresentation that [Rent–A–Center] actually relied upon and which result [sic] in damages." The gist of the motions is that there was no evidence of actual damages and no evidence of the attorney's fees being damages.

**10.** The Agreement defined "Claim" as follows:

Section 1.5. *"Claim"* means any claim, demand, cause of action, judgment, loss, damage, liability, cost and expense (including reasonable attorney's fees, whether suit is instituted or not) whether known or unknown, liquidated or contingent.

Rent–A–Center and National Loan Exchange also assert they could recover attorney's fees under section 38.001(8) of the civil practice and remedies code. That section permits the trial court to award attorney's fees "if the claim is for ... (8) an oral or written contract." TEX. CIV. PRAC. & REM.CODE ANN. § 38.001(8). However, to be entitled to attorney's fees under section 38.001(8), the party must recover actual damages. *Ochoa v. Craig*, 262 S.W.3d 29, 33 (Tex.App.-Dallas 2008, pet. denied). Rent–A–Center and National Loan Exchange did not allege they had any actual damages aside from attorney's fees, and, as discussed above, their attorney's fees were not actual damages. Accordingly, there was no evidence to support an award of attorney's fees under section 38.001(8).

Because Rent–A–Center and National Loan Exchange had no evidence of any actual damages and were not entitled to attorney's fees under section 38.001(8), we conclude the trial court did not err in granting Eagle Credit and RAS's motions for summary judgment. We overrule all the cross-issues.

## CONCLUSION

We conclude the trial court did not err in granting the motions for summary judgment. Accordingly, we affirm the trial court's judgment.