COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| WILLIAM ROWLAND EDWARDS, JR., | § | |
| Appellant, | § | No. 08-09-00040-CV |
| | § | |
| v. | | Appeal from |
| | § | |
| PAMELA DUNLOP-GATES, | | 116th District Court |
| INDIVIDUALLY AND THOMPSON, | § | |
| COE, COUSINS & IRONS, LLP, | | of Dallas County, Texas |
| A LIMITED LIABILITY | § | |
| CORPORATION AND | | (TC # 04-09759) |
| BYRON L. WOOLLEY, INDIVIDUAL, | § | |
| | | |
| Appellees. | § | |

**O P I N I O N**

William Rowland Edwards, Jr. appeals from a summary judgment entered in favor of the

defendants in this legal malpractice action. For the reasons that follow, we reverse and remand for

a trial on the merits.

**FACTUAL BACKGROUND**

Edwards filed suit against Pamela Dunlop-Gates, Gerrit M. Pronske, and Thompson, Coe,

Cousins, & Irons, LLP alleging claims of legal malpractice. Because the facts which give rise to

Edwards claims are entangled and somewhat complex, it is necessary to provide a more detailed

summary. A review of the record in the light most favorable to Edwards discloses the following

facts.

In April 1999, Edwards became a creditor in a bankruptcy proceeding involving Dr. William

Scott Blessing, his wife Lisa, and his professional medical association (MDPA). Edwards filed a

proof of claim seeking payment of debts from a series of financial dealings. At that time, Lionel

Smith served as an officer and director of Medifund Management Corp. (Management), a company that provided billing services for doctors. He also served as president and one of three stockholders in Medifund Financial Corp. (Financial). According to Edwards' pleadings, Smith was also, "a key person involved in all aspects" of MDPA's financial affairs. MDPA was a client of Medifund Management.

Financial loaned money to MDPA and later placed a lien on its accounts receivable. When Smith wanted to refinance the debt in December 1998, he approached Edwards with a business proposition by which Edwards would acquire Financial's loan to MDPA. By April 1999, the Blessings and MDPA had defaulted and Edwards made demand for payment. When the Blessings and MDPA filed for bankruptcy, they also filed an adversary proceeding naming Edwards as defendant.

### *The Adversary Proceeding, The Smith Suit & The Settlement Agreement*

Edwards hired Pronske, a bankruptcy specialist with the firm of Thompson Coe, to represent him in the adversary proceeding. The Blessings alleged claims against Edwards for fraud, breach of fiduciary duty, and breach of contract. Without Edwards' consent and despite repeated complaints, Pronske delegated a substantial amount of the case load to Gates. Despite many assurances to the contrary, only Gates appeared on Edwards' behalf at the hearing.

During this same time period, Edwards was engaged in litigation with Lionel Smith, whom he claimed defrauded him into entering business dealings with the Blessings and the Medifund entities. According to Edwards' pleadings, Smith made numerous material misrepresentations regarding the personal and professional financial condition of the Blessings and MDPA which induced him to enter the agreement. In this lawsuit, Edwards was represented by Marshall Searcy, an attorney with the firm of Kelly, Hart, & Hallman, PC.

At a hearing in the adversary proceeding on August 30, 2000, the parties announced a settlement. In addition to an agreement between Edwards and the Debtors, Smith's attorney announced that Smith would also be a party to the settlement. The terms were then read into the record.[1] The adversary proceeding was administratively closed on September 7, 2000. The Smith litigation was then dismissed by Searcy and Smith's counsel according to an agreed order of dismissal dated October 24, 2000.

### The First Trust Suit

About a year after the settlement, a group of creditors who were successors in interest to the Financial note[2] demanded Edwards pay the debt, contending that the settlement reached in the adversary proceeding did not release Financial's claims against Edwards. On October 17, 2001, the Moon Brothers sued Edwards claiming breach of a commercial financing agreement. *First Trust Corp. TTEE FBO v. Edwards*, 172 S.W.3d 230, 232 (Tex.App.--Dallas 2005, pet. denied). Edwards was represented in the First Trust Suit by Searcy. It is undisputed that Thompson Coe was not involved in his defense.[3] Edwards initially prevailed, but the Dallas Court of Appeals reversed and remanded, ruling in part that Edwards received a release from Smith individually but not from Medifund Financal. *First Trust*, 172 S.W.3d at 232. The court then concluded that:

> [O]n this record, as to the first issue, the settlement agreement in question does not, as a matter of law, release and discharge Edwards from the claims of MFC on which First Trust brings suit. . . . as to the second issue, that [sic] there is no evidence establishing that MFC authorized anyone to grant a release of its claims against

---

[1] Edwards specifically told Gates during the recitation of the agreement that the settlement must include a release from all obligations Edwards owed to Financial.

[2] These creditors are collectively referred to as the "Moon Brothers."

[3] According to Edwards, he first approached Pronske and Thompson Coe for representation since they had been instructed to, and to Edward's belief, had obtained a release from the obligation. They refused to defend Edwards and disavowed any knowledge of a release.

Edwards.

*First Trust*, 172 S.W.3d at 232.  During the re-trial, Edwards elected to settle the suit.

### *The Current Malpractice Suit & Summary Judgment*

On September 21, 2004, Edwards filed this suit alleging claims of legal malpractice.  His pleadings alleged negligence on behalf of Thompson Coe in:  (1) failing to obtain a valid release of the Financial debt obligations owed by Edwards and/or failing to inform Edwards that a valid release was not possible; (2) negligent supervision by Pronske; (3) violations of the Deceptive Trade Practices Act by Thompson Coe and Pronske; and (4) breach of fiduciary duty as to Pronske.  All that remains are the negligence claims.[4]

On October 2, 2008, Appellees filed both traditional and no-evidence motions for summary judgment.  The traditional motion alleged that all claims were barred by the applicable statutes of limitations.  The trial court granted summary judgment and this appeal ensues.  In two issues, Edwards attacks the validity of the summary judgment.

### STANDARD OF REVIEW

The purpose of summary judgment is to permit a trial court to promptly dispose of unmeritorious claims or untenable defenses.  *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 n.5 (Tex. 1979).  Summary judgment is proper if the defendant disproves at least

---

[4] Texas courts do not generally allow what are truly negligence claims to be fractured into claims for fraud, breach of contract, breach of fiduciary duty, or violation of the DTPA because, "the real issue remains one of whether the professional exercised that degree of care, skill, and diligence that professionals of ordinary skill and knowledge commonly possess and exercise." *Kimleco Petroleum, Inc. v. Morrison & Shelton*, 91 S.W.3d 921, 924 (Tex.App.--Fort Worth 2002, pet. denied), *citing Averitt v. PriceWaterhouseCoopers, LLP.*, 89 S.W.3d 330, 333 (Tex.App.--Fort Worth 2002, no pet.).  The rule serves to prevent legal-malpractice plaintiffs from transforming a claim that sounds only in negligence into other claims to avail themselves of longer limitations periods, less onerous proof requirements, or other tactical advantages.  *See Deutsch v. Hoover, Bax & Slovacek, L.L.P.*, 97 S.W.3d 179, 189 (Tex.App.--Houston [14th Dist.] 2002, no pet.).  Edwards makes no effort to distinguish his breach of fiduciary duty claim from his professional negligence claim.  He relies on the same conduct for both.  Similarly, his DTPA claims constitute claims for legal malpractice which do not amount to self-dealing, deception, or express representations sufficient to support a separate cause of action.  *See, e.g., Newton v. Meade,* 143 S.W.3d 571, 574 (Tex.App.--Dallas 2004, no pet.)(explaining that a cause of action claiming bad legal advice or improper representation is one for legal malpractice).

one element of the plaintiff's claims, or, alternatively, conclusively establishes each element of an affirmative defense. *Velsicol Chemical Corp. v. Winograd*, 956 S.W.2d 529, 530 (Tex. 1997).

We review the grant or denial of a traditional motion for summary judgment *de novo*.[5] *Valence Operating Company v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Texas Integrated Conveyor Systems, Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 365 (Tex.App.--Dallas 2009, pet. denied); *Garner v. Fidelity Bank, N.A.*, 244 S.W.3d 855, 860 (Tex.App.--Dallas 2008, no pet.). To prevail on a motion for summary judgment, the movant must show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c); *Provident Life and Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215-16 (Tex. 2003); *Nixon v. Mr. Property Management Company, Inc.*, 690 S.W.2d 546, 548 (Tex. 1985); *Texas Integrated Conveyor Systems, Inc.*, 300 S.W.3d at 365; *Garner*, 244 S.W.3d at 860.

In reviewing a trial court's decision to grant summary judgment, we resolve all doubts against the movant and view the evidence in the light most favorable to the non-movant. *See Shah v. Moss*, 67 S.W.3d 836, 842 (Tex. 2001); *Tranter v. Duemling*, 129 S.W.3d 257, 260 (Tex.App.--El Paso 2004, no pet.). When a trial court's summary judgment order does not state the specific grounds for its ruling, we must affirm the judgment if any of the theories advanced by Appellee's motion are meritorious. *Western Investments, Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005); Texas Integrated Conveyor Systems, Inc., 300 S.W.3d at 365; *First Union Nat. Bank v. Richmont Capital Partners I, L.P.*, 168 S.W.3d 917, 923 (Tex.App.--Dallas 2005, no pet.).

We begin with Issue Two, which broadly asserts that summary judgment was improper. Issue Two is comprised of two separate, more specific inquiries: (1) whether the two-year statute

---

[5] This case was transferred from our sister court in Dallas, therefore we decide this case in accordance with the precedent of that court. TEX.R.APP.P. 41.3.

of limitations for legal malpractice bars recovery, or whether some discovery rule and/or tolling doctrine applies to extend the limitations period; and (2) whether the trial court erred in granting summary judgment because Edwards raised material fact issues his professional negligence claim.

## STATUTE OF LIMITATIONS

Appellees sought summary judgment in part based on their claim that suit was barred by limitations. Under Texas law, the statute of limitations in legal malpractice claims is two years. TEX.CIV.PRAC.&REM.CODE ANN. § 16.003(a)(West Supp. 2010); *Parsons v. Turley*, 109 S.W.3d 804, 807-08 (Tex.App.--Dallas 2003, pet. denied). The limitations periods begins to run at the time a cause of action accrues, that is when the plaintiff suffers a legal injury. *Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex. 1997).

A plaintiff suffers a "legal injury"when facts come into play which would authorize him to seek a judicial remedy. *Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 120 (Tex. 2001). Once a claimant learns of a wrongful injury, the statute of limitations begins to run even if the claimant does not yet know "the specific cause of the injury; the party responsible for it; the full extent of it; or the chances of avoiding it." *PPG Industries, Inc. v. JMB/Houston Centers. Partners Ltd. Partnership,* 146 S.W.3d 79, 93-94 (Tex. 2004); *Velsicol Chemical Corp. v. Winograd,* 956 S.W.2d 529, 531 (Tex. 1997). A legal malpractice claim founded upon faulty advice accrues when the advice is taken. *Woolley v. Clifford Chance Rogers & Wells, L.L.P.*, No. 3:01-CV-2185, 2004 WL 57215, *5 (N.D. Tex. Jan. 5, 2004).

When the defendant bases a summary judgment motion on the statute of limitations, he must conclusively prove each element of that affirmative defense as a matter of law. *KPMG Peat Marwick v. Harrison County Housing Finance Corp.*, 988 S.W.2d 746, 748 (Tex. 1999); *Shah*, 67 S.W.3d at 842. *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex. 1996).

The acts which form the basis of Edwards' claims occurred on or before September 7, 2000, when the settlement agreement became final. He filed suit on September 21, 2004, more than four years later. Unless the discovery rule or a tolling principle applies to extend the statute of limitations period, Edwards' claims are barred by limitations.

### *The Discovery Rule*

Generally speaking, most claims are barred two years after accrual, whether or not the plaintiff has discovered the injury or the extent of his damages. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 16.003(a); *Apex Towing*, 41 S.W.3d at 120; *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996). However, Texas applies the discovery rule to legal malpractice claims. *Woolley,* 2004 WL 57215 at *5; *Apex Towing*, 41 S.W.3d at 120-21. The discovery rule is an exception to the legal injury rule whereby a cause of action does not accrue until the plaintiff knew, or in the exercise of reasonable diligence, should have known of the wrongfully caused injury. *See KPMG Peat Marwick*, 988 at 749; *Murphy*, 964 S.W.2d at 270. The discovery rule applies in cases of fraud, fraudulent concealment, and otherwise where the nature of the injury is inherently undiscoverable and the evidence of injury is objectively verifiable. *Murphy*, 964 S.W.2d at 270. An injury is inherently undiscoverable if it is by nature unlikely to be discovered within the prescribed limitations period. *See id*. Where, as here, a defendant moves for summary judgment on the affirmative defense of limitations and the plaintiff pleads the discovery rule, the defendant must also negate the application of the discovery rule. *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999).

The reasoning behind the discovery rule's application in legal malpractice claims has been well articulated by the Dallas Court of Appeals:

> [I]t is unrealistic to expect a lay client to have the legal acumen to perceive the negligence of his attorney in giving faulty [legal] advice, and because the injury flowing from faulty [legal] advice is objectively verifiable.

*Murphy v. Mullin, Hoard & Brown, L.L.P.*, 168 S.W.3d 288, 291 (Tex.App.--Dallas 2005, no pet.). Accordingly, such a claim does not accrue until the client discovers, or should have discovered through the exercise of reasonable care and diligence, facts establishing the elements of his cause of action. *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990).

Edwards argues that his cause of action did not accrue until either the court of appeals determined the release was ineffective [August 23, 2005] or he paid to settle the First Trust Suit [on or about October 1, 2007]. He contends that since he filed suit on September 21, 2004, the summary judgment evidence raises a fact issue as to when the claim accrued. But the Moon Brothers filed suit against Edwards on October 17, 2001 which should have alerted Edwards to the injury. *See Woolley*, 2004 WL 57215 at *5 (holding that defendant met its burden of proof showing the discovery rule was insufficient to avoid the defense of limitations where initiation of a lawsuit occurred more than two years prior to plaintiff filing suit; initiation of that lawsuit constituted an opposing party taking a formal position that might have alerted Woolley to the injury caused by the alleged malpractice); *see also Murphy*, 964 S.W.2d at 272 (holding that where accountant malpractice created liability for unpaid taxes, discovery took place no later than when the Internal Revenue Service issued a deficiency notice because it was at that time that the government took a formal position opposing the parties' interest). In fact, in his own affidavit, Edwards admitted that he was sued by First Trust on October 17, 2001. He also attested:

> 15. After the prove up in the Adversary on August 30, 2000, I spoke with Moon who told me he had reviewed the transcript of the Adversary and did not think it released the [Financial] claim against me; however, I had sent the transcript of the Adversary prove up to my other attorneys who reviewed it and reported to me that they thought it sufficient to release me from the [Financial] claim.

> 16. I was served with process in the First Trust suit and forwarded it to attorney Marshall Searcy. Mr. Searcy had reviewed the transcript of the Adversary and he told me I had a viable defense of release based on that transcript. He included the

affirmative defense of release in my answer.

By his own admission, Edwards was aware at least of the potential injury on or before October 2001, more than two years before bringing suit. *See Murphy,* 964 S.W.2d at 270. Thereafter, the statute of limitations clock ran, whether or not Edwards yet knew: (1) the specific cause of the injury; (2) the party responsible for it; (3) the full extent of it; or (4) the chances of avoiding it. Because October 2001 is more than two years before Edwards brought suit, Appellees met their burden of demonstrating that the discovery rule, in and of itself, is insufficient to avoid the defense of limitations. Unless a tolling provision applies, the statute of limitations ran as a matter of law on October 17, 2003, approximately eleven months before Edwards brought suit.

### *Application of the Hughes Tolling Principle*

Texas follows the "*Hughes* rule" initially articulated in *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154 (Tex. 1991). There, the Texas Supreme Court announced a tolling doctrine which is applicable in situations where a lawyer commits malpractice in litigation of a claim or defense. *Hughes*, 821 S.W.2d at 156-57. The *Hughes* doctrine provides that when an attorney commits malpractice in prosecuting or defending against any claim that results in litigation, the statute of limitations is tolled until all appeals on the underlying claim are exhausted. *Id*. The tolling rule applies where the client has an accrued claim and the attorney commits malpractice either before litigation commences, after litigation has commenced, or in the course of prosecuting or defending against the claim in a non-litigation setting. *Id*.

The Texas Supreme Court later expanded on *Hughes* to include situations where the lawyer's underlying malpractice occurred in a non-litigation setting. *Gulf Coast Investments Corp. v. Brown*, 821 S.W.2d 159, 159-60 (Tex. 1991). In *Gulf Coast*, the defendant represented the plaintiff in a non-judicial foreclosure action. *Gulf Coast Investments Corp.*, 821 S.W.2d at 160. After a judicial

sale, the party foreclosed upon filed a wrongful foreclosure suit against Gulf Coast, alleging improper notice of the impending sale. *Id.* While the plaintiff filed the malpractice action only seven months after judgment was rendered against Gulf Coast, the claim was filed more than two years after institution of the wrongful foreclosure action. *Id.* The trial court granted the defendant's motion for summary judgment, concluding that plaintiff should have been aware of its attorney's malpractice at the time the wrongful foreclosure suit was filed. The court of appeals affirmed. *Id.* at 160.

The Texas Supreme Court reversed, observing that when an attorney commits malpractice in connection with the prosecution or defense of a claim that results in litigation, *Hughes* tolls any malpractice claim against that attorney "until all appeals on the underlying claim are exhausted." *Gulf Coast Investments Corp.*, 821 S.W.2d at 160. The court concluded that there was no reason why the rule "should not apply when the attorney's malpractice results, not in an appeal on the underlying claim, but in . . . [a separate] action by a third-party against the client." *Id.* at 160. This is necessary "because the viability of the second [malpractice] cause of action depends on the outcome of the first." *Id. quoting Hughes*, 821 S.W.2d 157.

In *Apex Towing Co.*, the plaintiffs alleged the defendants had committed malpractice in the underlying dispute by failing to file a limitation of liability action. That failure, together with other related errors, left Apex Towing subject to liabilities in excess of the value of their vessel, which supposedly could have been avoided had counsel handled the matter properly. *Apex Towing*, 41 S.W.3d at 119. The trial judge entered judgment against Apex Towing for damages on August 31, 1994. *Id.* Plaintiffs discharged counsel on January 27, 1995, but they did not file suit against them until February 19, 1997. *Id.* Although the plaintiffs argued that the statute of limitations was tolled until the underlying dispute was finally resolved, the court of appeals disagreed. *Id.* It concluded

that since the lawyer had been discharged more than two years prior to filing suit, the claims against those attorneys were barred. *Id.* The Supreme Court reversed and reaffirmed the *Hughes* rule:

> When an attorney commits malpractice in the prosecution or defense of a claim that results in litigation, the statute of limitations on a malpractice claim against that attorney is tolled until all appeals on the underlying claim are exhausted or the litigation is otherwise finally concluded.

*Apex Towing*, 41 S.W.3d at 119. The court reiterated that continued representation is not a requirement of the rule. *Id.* Hiring new counsel would not necessarily eliminate the problem of a client having to adopt inconsistent positions in the underlying case and the malpractice case. Lower courts were instructed to follow "a categorical approach" to employing the *Hughes* tolling principles rather than a case-by-case analysis:

> [W]ithout re-examining whether the policy reasons behind the tolling rule apply in each legal-malpractice case matching the *Hughes* paradigm, courts should simply apply the *Hughes* tolling rule to the category of legal-malpractice cases encompassed within its definition.

*Apex Towing*, 41 S.W.3d at 122. The question before us, then, is whether Edwards' claims fall within the framework of *Hughes*. We conclude that they do.

Edwards alleged Thompson Coe committed malpractice in either failing to obtain an a release of his obligations to Financial or failing to inform him that the agreement did not operate as release. Edwards successfully pursued this theory in the trial court. Claims by the Moon Brothers were not legally viable until the court of appeals reversed the lower court. Although Thompson Coe allegedly committed malpractice in the adversary proceeding and the First Trust suit was a later-filed separate action, Edwards would have prevailed had Thompson Coe obtained the release as Edwards instructed – the release he thought he had obtained. We conclude that the *Hughes* tolling principle applies to toll the statute of limitations from the October 17, 2001 discovery date until the Dallas Court of Appeals issued its decision against Edwards in 2005. Summary judgment on limitations

grounds was improper.

## GENUINE ISSUES OF MATERIAL FACT

Thompson Coe represented Edwards: (1) in his claims against Debtors and in his defense against the Debtors' claims in the adversary proceeding; and (2) in negotiating and achieving the settlement of the Smith litigation. Edwards claims that the firm committed malpractice by failing to inform him he would not be released from the Financial debt and by failing to procure an effective release. In his view, this caused an indivisible, single injury, i.e., the loss of his intended benefit in settling.

Legal malpractice cases in Texas are based on negligence. *Barcelo v. Elliott*, 923 S.W.2d 575, 579 (Tex. 1996); *Gallagher v. Wilson*, No. 2-09-376-CV, 2010 WL 3377787 (Tex.App.--Fort Worth Aug. 26, 2010, no pet.)(mem. op.)*; Delp v. Douglas*, 948 S.W.2d 483, 495 (Tex.App.--Fort Worth 1997), *rev'd in part on other grounds*, 987 S.W.2d 879 (Tex. 1999). To prevail on a legal malpractice claim, a plaintiff must show that: (1) the attorney owed the plaintiff a duty; (2) the attorney breached that duty; (3) the breach proximately caused the plaintiff's injuries; and (4) damages occurred. *Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 117 (Tex. 2004), *citing Peeler v. Hughes & Luce*, 909 S.W.2d 494, 496 (Tex. 1995).

A plaintiff must generally present expert testimony to establish the breach and causation elements. *Alexander*, 146 S.W.3d at 117, 119-20. Breach of the standard of care and causation are separate inquiries, and an abundance of evidence as to one cannot substitute for a deficiency of evidence as to the other. *Id*. at 119.

Attorneys are held to the standard of care that a reasonably prudent attorney would exercise, and expert testimony is typically needed to demonstrate that standard of skill and noncompliance with that standard. *Longaker v. Evans*, 32 S.W.3d 725, 735 (Tex.App.--San Antonio 2000, pet.

withdrawn)(en banc op. on reh'g); *Jatoi v. Decker, Jones, McMackin, Hall & Bates*, 955 S.W.2d 430, 434 (Tex.App.--Fort Worth 1997, writ denied); *Hall v. Rutherford*, 911 S.W.2d 422, 424 (Tex.App.--San Antonio 1995, writ denied).

> [A]n attorney can commit legal malpractice by giving an erroneous legal opinion or erroneous advice, by failing to give any advice or opinion when legally obliged to do so, by disobeying a client's lawful instruction, by taking an action when not instructed by the client to do so, by delaying or failing to handle a matter entrusted to the attorney's care by the client, or by not using an attorney's ordinary care in preparing, managing, and presenting litigation that affects the client's interests.

*Kimleco Petroleum, Inc. v. Morrison & Shelton*, 91 S.W.3d 921, 923-24 (Tex.App.--Fort Worth 2002, pet. denied), *citing Zidell v. Bird*, 692 S.W.2d 550, 553 (Tex.App.--Austin 1985, no writ). Expert testimony is not required if the attorney's lack of care and skill is so obvious that the trier of fact can find negligence as a matter of common knowledge. *James V. Mazuca and Assocs. v. Schumann*, 82 S.W.3d 90, 97 (Tex.App.--San Antonio 2002, pet. denied). The most common example is one in which an attorney allows the statute of limitations to run on a client's claim. *Id*. Edwards claims that he informed Gates he would settle the adversary proceeding only if he obtained a release of the Medifund Financial claim, giving him a contractual defense if sued on that claim. To prevail on an action for legal malpractice, the plaintiff must prove the attorney's act or omission proximately caused the plaintiff's injury. *See Alexander*, 146 S.W.3d at 117. To show proximate cause a plaintiff must prove both cause-in-fact and foreseeability. *See id*.; *Rodriguez v. Klein*, 960 S.W.2d 179, 184 (Tex.App.--Corpus Christi 1997, no pet.).

Appellees motion for summary judgment alleged that Edwards' claims failed as a matter of law because: (1) Edwards did not suffer damages by settling the adversary proceeding; and (2) the actions of third parties destroyed the causal link between Appellees' alleged conduct and Edwards' alleged injury.

As for the damages argument, Appellees claimed that Edwards' recovery exceed the amount sought in his proof of claim. But Edwards has raised a fact issue as to the amount of damages incurred as a result of the First Trust litigation. Attorney fees are not normally recoverable as actual damages, but there are two situations where they may be considered actual damages; in a legal malpractice case, the plaintiff's damages may include the attorney fees paid to the defendant-attorney in the underlying case, and when the defendant's tort requires a party to protect its own interests by bringing or defending an action against a third party, the plaintiff may recover from the defendant the attorney fees incurred in the action against the third party. *RAS Group, Inc. v. Rent-A-Center East, Inc.*, ---- S.W.3d ----, 2010 WL 4400511, *8 (Tex.App.--Dallas, Nov. 08, 2010 no pet. h.).

Edwards likewise raises a fact issue with respect to causation. Appellees maintain that since Searcy represented Edwards in the Smith lawsuit, their conduct is excused by the acts of a third party which breaks the causal link necessary for Edwards to prevail. Yet the Smith suit was settled as part of the bankruptcy adversary proceeding, with Gates clearly negotiating a release. Not only did Edwards believed he had obtained a release, Gates believed it herself. We conclude that Edwards raises genuine issues of material fact which preclude summary judgment. We sustain Issue Two. Because of our resolution if Issue Two, we need not address Issue One. We reverse and remand the judgment for trial on the merits.

April 28, 2011

_____
ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.